Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**FILED**

# UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

for the

District of New Mexico

AUG **2 7** 2020

Division

MITCHELL R. ELFERS
CLERK

|  |  |
|---|---|
| Dr. Mital SumanKumar Patel | Case No. 20 cv 870 KK |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* ☐ Yes ☒ No |
| -v- | |
| Honorable Robert Wilke secretary, United States Department of Veterans affairs | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Dr. Mital Patel |
| Street Address | 1009 Jicarilla street |
| City and County | Hobbs, lea |
| State and Zip Code | NM 88240 |
| Telephone Number | 9148884959 |
| E-mail Address | mital1982@gmail.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Honorable Robert Wilke |
| Job or Title *(if known)* | Secretary, United states, Department of Veterans Affairs |
| Street Address | 810 vermont ave, NW |
| City and County | Washington, DC |
| State and Zip Code | 20420 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

C.     **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | VAMC |
| Street Address | 1 medical center drive |
| City and County | Clarksburg |
| State and Zip Code | 26301 |
| Telephone Number | 3046233461 |

II.   **Basis for Jurisdiction**

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒       Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐       Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐       Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐       Other federal law *(specify the federal law)*:

☐       Relevant state law *(specify, if known)*:

☐       Relevant city or county law *(specify, if known)*:

**III.    Statement of Claim**

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☒    Failure to hire me.

☐    Termination of my employment.

☐    Failure to promote me.

☐    Failure to accommodate my disability.

☐    Unequal terms and conditions of my employment.

☐    Retaliation.

☐    Other acts *(specify)*: _____

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

July 14th, 2015

C.    I believe that defendant(s) *(check one)*:

☐    is/are still committing these acts against me.

☒    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☐    race _____

☐    color _____

☐    gender/sex _____

☐    religion _____

☒    national origin _____

☐    age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*

☐    disability or perceived disability *(specify disability)*

_____

E.    The facts of my case are as follows.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

The VAMC clarksburg wv, did not hire me on basis of board certification of ABOS criteria. subsequent after i sued they changed the criteria and hired a doctor without ABOS certification anyways.
The use of board certification by abos for hiring of orthosurgeon used by hospitals is a discrimination of national origin. IT has dispartate impact on foreign born.
I had EEOC case filed. IT did make a decision, which was not in my favor. EEOC case no. is 530-2016-00308X. Its over 3 months agency has not sent its determination. so i can sue in federal court. i will attach eeoc complaint copy.

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

August 18, 2015

B.    The Equal Employment Opportunity Commission *(check one)*:

☒    has not issued a Notice of Right to Sue letter.

☐    issued a Notice of Right to Sue letter, which I received on *(date)* _____ .

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Main relief which was sought was decision that " practice of using Board Certification for hiring and priviledging is discrimination of national origin and has dispartate impact on orthosurgeons who do residency outside united states." we had asked for around 300000 in actual damages from loss of wages plus attorney fee

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.      For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case−related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        8/24/2020

Signature of Plaintiff      *mitalspatel*

Printed Name of Plaintiff     Dr. Mital Patel

### B.      For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

## UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## BALTIMORE FIELD OFFICE

| | | |
|---|---|---|
| **DR. MITAL PATEL,** | ) | |
| **Complainant** | ) | |
| | ) | **EEOC NO: 530-2016-00308X** |
| **v.** | ) | |
| | ) | |
| **ROBERT WILKIE,** | ) | **AGENCY NO:** |
| **SECRETARY, UNITED STATES** | ) | **2004-0540-2015104863** |
| **DEPARTMENT OF VETERANS** | ) | |
| **AFFAIRS** | ) | **JOHN ALVIN HENDERSON** |
| **Agency** | ) | **ADMINISTRATIVE JUDGE** |
| | ) | |
| | ) | |

## <u>DECISION</u>

APPEARANCES:

COMPLAINANT:

      DR. MITAL PATEL
      1803 RED ROCK DRIVE
      GALLUP, NM 87301

COMPLAINANT'S REPRESENATIVE:

      ERIK D. SNYDER, ESQ.
      PASSMAN & KAPLAN
      1828 L STREET, NW
      WASHINGTON, DC 20036

AGENCY'S REPRESENTATIVE:

      STEPHEN F. BUTERA, ESQ.
      OFFICE OF CHIEF COUNSEL
      DEPARTMENT OF VETERANS AFFAIRS
      ONE MEDICAL CENTER DRIVE,
      CLARKSBURG, WV 26301

BEFORE:

      JOHN ALVIN HENDERSON
      ADMINISTRATIVE JUDGE
      EQUAL EMPLOYMENT OPPORTUNITY
      COMMISSION

## I.   **Introduction**

This is a matter before the United States Equal Employment Opportunity Commission pursuant to Section 717 of Title VII of the Civil Rights Act of 1964 (Title VII), as amended; 42 U.S.C. § 2000e-1, et seq.

The Complainant filed a motion for partial decision without a hearing on October 13, 2017. Pursuant to the scheduling and discovery order that existed at the time of the filing, the nonmoving party had within 15 days to file any opposition to the motion for a decision without a hearing.  The Agency filed its opposition on July 12, 2018.  The Complainant moved to strike the Agency's opposition as untimely.  I granted the Complainant's motion to strike on October 15, 2018.  I also denied the Complainant's motion for a decision without a hearing on October 15, 2018.

A hearing was held in this matter on October 24, 2018.

## II.   **Accepted Issues**

The accepted issues in this matter are:

Whether the Complainant was discriminated against based on his national origin when on July 24, 2015, he became aware that he was not eligible to be hired for the position of Orthopedic Surgeon because he did not possess certification from a recognized board in the United States.

## III.   **Findings of Fact**

Complainant Mital Patel was born in India.  ROI 78.  He received his medical degree from Baroda Medical College in Vadordara, India.  ROI 116.  Complainant completed his orthopedic surgery residency in Baroda Medical College in Vadodara, India.  ROI 117.  After he completed his residency, Complainant received certifications from the Educational Commission for Foreign Medical Graduates.  ROI 129.  Complainant completed a one year orthopedic surgery fellowship at Lennox Hill Hospital in New York City.  The fellowship focused on hip replacement.  The

Lennox Hill Hospital is accredited by the Accreditation Council for Graduate Medical Education (the "ACGME"). ROI 117.

After completing his fellowship at Lennox Hill, Complainant served as a senior orthopedic surgery fellow at the University of Washington in Seattle, Washington. ROI 117. During the fellowship, Complainant received privileges to practice orthopedic surgery at the Agency's Puget Sound VA Medical Center (the "Puget Sound VAMC"). According to Complainant, the Puget Sound VAMC is a level three facility.

Complainant is licensed to practice medicine as an orthopedic surgeon by the State of Wisconsin. ROI 125-26.

Complainant applied for the position of Physician (Orthopedic Surgeon), responding to vacancy announcement number T38-15-CSB-1339775-BU, at the Clarksburg VAMC. ROI 121-41. The Vacancy ID number for the position was 1339775. Human Resources Specialist Shaundra Bucklew posted the ad on usajobs.gov.

Dr. Riaz Kassim the Chief of Surgery, received Complainant's CV in response to the job announcement. Dr. Kassim was born in Pakistan. Dr. Kassim received his medical training in Pakistan. He did his residency in General Surgery at the University of West Virginia. He took a fellowship at the University of Texas in Dallas.

The job vacancy occurred at the Clarksburg VAMC because the previous orthopedic surgeon had retired.

Neither party produced any evidence about when Bucklew posted the advertisement, or how long it was posted. Kassim stated that he had received at least two or three applications for the vacancy, excluding Complainant. Kassim did not know the national origin of any of the applicants, excluding Complainant and the ultimate selectee.

Dr. Glenn Snider was then the Chief of Staff and the Acting Director for the Clarksburg VAMC. Dr. Snider was born in the United States. According to his statement in the report of investigation, Dr. Snyder stated that the retiring orthopedic surgeon at the Clarksburg VAMC was born in India. However, during the hearing, Dr. Snyder stated that the retiring orthopedic surgeon, Dr. Fiddler, was born in the United States.

Complainant visited the Clarksburg VAMC. During his time there, he met with Dr. Kassim, Dr. Snider, a receptionist, and a human resources person who spoke to him about salaries. During the meeting, Complainant testified that the human resources person told him that he could expect to be paid $380,000 per year. At the end of the interview, Dr. Kassim had previously contacted Complainant's references and had reviewed his CV—he was very impressed with Complainant's experience and qualifications. Dr. Kassim wanted to hire the Complainant for the position; he testified that he wanted Complainant to begin working immediately after his fellowship ended. On July 14, 2015, Dr. Kassim sent Complainant an email stating:

> Hope all is well as you come to the end of your fellowship. Dr. Snider, Chief of Staff and Acting Director just returned yesterday. He has agreed to make you an offer for employment. The necessary paperwork will ensue this week and you should have a letter of offer early next week.
>
> I [presume] your wife has also completed her residency in internal medicine. Is she interested in VA employment?

Hr'g Ex. 5. Dr. Kassim and Dr. Snider both testified that they were very interested in hiring Complainant for the vacancy. Dr. Snider testified that at the time that Complainant was being considered for the position, the Clarksburg VAMC had roughly 75 doctors on staff, and a that a significant number of those doctors are foreign born.

In order for a doctor or a nurse practitioner to be hired at the Agency, they must undergo a credentialing review by the credentialing coordinator to determine whether they meet the VAMC's

4

minimum requirements for practicing at the facility.  These requirements vary from facility to facility—in the case of the Clarksburg VAMC, they are written into the bylaws of the institution and are voted on by all of the chiefs for all of the relevant departments.  The relevant provisions of the bylaws existing at the time of Complainant's application stated that to have privileges to perform core medical procedures at the Clarksburg VAMC, a person must meet both qualifications:

I.    A) Current certification or active participation in the examination process leading to certification in orthopedic surgery by the American Board of Orthopedic Surgery or the American Osteopathic Board of Orthopedic Surgery, or B) Successful completion of an ACGME or AOA accredited post graduate training program in orthopedic surgery

And

II.   Documentation of the performance of at least 100 orthopedic procedures during the last 12 months or demonstrated successful participation in a hospital affiliated formalized residency or special clinical fellowship during which at least 30 cases were performed or assisted by applicant.

Hr'g Ex. 19.  Complainant stipulates that he is not an orthopedic physician.  In order to have obtained an ABOS certification to be an orthopedic surgeon, one must complete 60 months of accredited residency, no more of 6 months of which can be obtained in a residency program outside the United States.  Complainant testified that he applied to 80 programs at the beginning of his time in the United States, however he was not interviewed for any of these vacancies.

Neither party presented any evidence to dispute that Complainant met the requirements of section II — accordingly, only subsection I(B) is relevant to the credentialing.

According to Complainant, all ACGME accredited residency and fellowship programs are in the territorial United States.  Hr'g Ex. 7.  The Agency contends that there are other ACGME accredited residency or fellowship programs outside of the United States.  Hearings exhibits 16

and 17 reflect 9 ACGME programs in Singapore; Beiruit, Lebannon; Doha, Qatar; and Muscat, Oman.

Other VAMCS have different policies for conferring privileges to perform medical procedures. Complainant testified that the Puget Sound VAMC permits the credentialing organization to provide a waiver for the ACGME accreditation.

Julie Sanders is the credentialing coordinator for the Clarksburg VAMC. She was born in the United States. Sanders received Complainant's CV and conducted the credentialing review per the Agency's protocols. She determined that the Complainant did not meet the minimum qualifications to perform medical procedures at the facility because he had not completed an "ACGME or AOA accredited post graduate program in orthopedic surgery." She relayed her findings to Dr. Kassim and to Dr. Snider. At Dr. Kassim's urging, Dr. Snider asked Sanders to "escalate" the credentialing analysis, or to ask the headquarters credentialing office for a second opinion. Sanders emailed Kathryn Enchelmayer, the Director of Medical Staff Affairs, asking whether "based on the [Clarksburg's] orthopedic surgery privileging criteria […], would a provider with a one year fellowship meet the qualifications? All other ortho training and education was completed in India." Hr'g Ex. 19. Enchelmayer responded that there was no "wiggle room for 'comparable' training." Id.

Sanders reported to Buckalew, Kassim, and Snider that Complainant did not meet the requirement for orthopedic surgery privileges. Buckalew testified during the hearing that Sanders told her she only inquired into whether Complainant's residency was in the United States. In her statement in the investigation, Buckalew stated that the Agency "determined that [Complainant's] residency program was not comparable to the Residency program in the United States." ROI p. 96. During the hearing, both Buckalew and Sanders disclaim having conducted any inquiry into

the comparability of Complainant's residency in India. They both testified that the credentialing inquiry ended with whether the program in India was an ACGME or AOG approved institution.

Dr. Kassim told Complainant that they could not proceed with his application because he did not meet the credentialing requirements.

Both Complainant and his wife had foregone employment based on Dr. Kassim's assurances that he would be hired shortly. Complainant struggled financially in the year following. He experienced depression and anxiety. He had difficulty sleeping, became more jittery, and had flashes of anger. These emotional conditions lasted for roughly 4 months.

In the following year, Complainant was offered a position which he accepted with the Lee Regional Medical Center in Gallup New Mexico. His income was $550,000.00 per year.

Roughly one year after the Agency refused to hire Complainant, the leadership at the Clarksburg VAMC decided to change the bylaws to permit it to have the discretion to waive ACGME or AOA certifications on a case by case basis. Complainant filed a charge of discrimination against the Agency. During the pendency of the EEO litigation, the Agency offered Complainant the job it had previously declined him. Complainant refused. Thereafter, the Agency hired Dr. Sambandan, an orthopedic doctor who (as with Complainant) was born in India and had completed his residency in India, for the vacancy.

Complainant offers no evidence of any of the other persons who applied for the position at this point or at any point in the past. According to Complainant, apart from the educational qualifications described above, there were no other geographic, nationality-based, or other restrictions on the applicants. According to Dr. Snider, as of the date of Complainant's nonselection, all other doctors at the Clarksburg VAMC had residencies at ACGME institutions.

Data on Domestic and Foreign Orthopedic Residencies

 Complainant presents evidence which he contends supports the argument that the ACGME requirement has a disparate impact on foreign born applicants.  Complainant presented a 2006-2007 census of graduate medical education, produced by the Journal of the American Medical Association.  Hr'g Ex. 9.  That document is the results of a survey of "directors of programs accredited by the ACGME about educational characteristics of their training programs [… reflecting the directors'] active, transferred, and graduated residents and fellows for the academic year 2006-2007.  [The authors] provided program directors with lists of residents and fellows from the database and asked the directors to confirm or modify the training status of trainees who were present in their programs the prior year; to add new physicians to their programs whom we did not already have in our database; and to confirm, edit, or add demographic information."  Id.

 The 2006-2007 survey is the product of a survey of 8,502 active programs for the 97,705 physicians-in-training, reflecting 93.2% of the active trainees.

 For that year, there were 152 ACGME approved orthopedic surgery programs.  They had 3,187 physicians-in-training.  Id.  Of those, 96.9% were U.S. allopathic medical graduates, and 2.3% were foreign medical graduates.  Id.

 Complainant also presents the data from 2012-2013 and 2013-2014, also from the Journal of the American Medical Association.  Hr'g Ex. 10, Hr'g Ex. 11.

 The 2012-2013 JAMA tabulation reflects a survey of 9,613 program directors, of which 9,613, or 95.5%, completed the program survey.  The survey also reviews the active trainees and recent physician graduates from ACGME accredited institutions.  The 2012-13 survey stated that it inquired about this demographic information about the trainees and recent physicians: sex, birthdate, country of birth, citizenship status, and race/ethnicity.  Hr'g Ex. 10.

For the 2012-2013 year, there were 154 orthopedic surgery programs approved by the ACGME.  There were 3,501 resident physicians in those programs, of which 96.6% were trained at medical institutions in the United States, and 2.4% were trained at foreign institutions.  Hr'g Ex. 10.

For the 2013-2014 year, JAMA conducted the same survey of 9,613 programs, with a 95.5% response rate.  In that year, there were 3,529 residents in ACGME approved orthopedic surgery residencies, and of those, 97% were trained at domestic medical institutions, and 2.0% were trained at foreign medical institutions.  Hr'g Ex. 11.

Finally, Complainant presents a tabulation from the Association of American Medical Colleges' 2014 Physician Specialty Data Book, dated November 2014.  Complainant cites to Tab 1.7 of that document, titled "Number of and Percentage of Active Physicians who are International Medical Graduates by Specialty, 2013."  In 2013, there were 19,374 active physicians specializing in orthopedic surgery, and 1,105 of those were international medical graduates, or 5.7% of the whole.  Hr'g Ex. 12.

The Agency offers no evidence that any of these tabulations are incorrect or otherwise unworthy of credence.

## III.   Applicable Law

### National Origin Discrimination Standard

Title VII of the Civil Rights Act provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. §2000e-2(a)(1).

Title VII further provides:

9

All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5 *[United States Code]*, in executive agencies *[originally, other than the General Accounting Office]* as defined in section 105 of Title 5 *[United States Code]* (including employees and applicants for employment who are paid from non-appropriated funds), in the United States Postal Service and the Postal Regulatory Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin."

**McDonnell Douglass Prima Facie Case**

In a discrimination case brought pursuant to Title VII, Complainant bears the burden to initially establish a prima facie case of discrimination. Texas Dep't of Cmty. Aff. v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Mitchell v. Data Gen. Corp., 12 F.3d 1310 (4th Cir. 1993). If a prima facie case is established, the burden shifts to the Agency to articulate a legitimate, nondiscriminatory reason for the challenged action. Burdine, 450 U.S. at 253-4; McDonnell Douglas, 411 U.S. at 802. Complainant may then show that the explanation offered by the Agency is not the true reason, but a mere pretext for discrimination. Burdine, 450 U.S. at 256; McDonnell Douglas, 411 U.S. at 804. However, it is not enough to disbelieve the employer's articulated reason. In addition, the fact-finder must believe Complainant's explanation of intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742 (1993).

The ultimate burden of persuading the trier of fact that the Agency discriminated against Complainant always remains with Complainant. A prima facie case and sufficient evidence of the Agency's pretext may permit a finding of discrimination, even without additional independent evidence. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000). As noted by the United

States Supreme Court, the factual circumstances necessarily vary in discrimination cases. Id. The Agency's burden to articulate a legitimate non-discriminatory reason for its actions does not require the Agency to prove the existence of non-discriminatory reasons; rather, the Agency bears only the burden of clearly explaining the non-discriminatory reason.   Burdine at 260. Consequently, the Supreme Court has developed frameworks, or proof schemes, to assist in determining whether a prima facie case has been established.  See Burdine, 450 U.S. at 256 n.6; McDonnell Douglas, 411 U.S. at 802 n.13.

Generally, to establish a prima facie case of discrimination, Complainant must demonstrate that: (1) he is a member of the protected class; (2) he was otherwise qualified for the position he held or sought to hold; (3) an adverse employment action occurred; and (4) under circumstances giving rise to an inference of discrimination.  Henson v. Liggett Grp., Inc., 61 F.3d 270, 274 (4th Cir. 1995)(citing EEOC. v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992)); Evans v. Tech. Application & Serv. Co., 875 F. Supp. 1115 (D. Md. 1995), aff'd, 80 F.3d 954 (4th Cir. 1996); Saunders v. Stone, 758 F. Supp. 1143 (E.D. Va. 1991)(citing McDonnell Douglas, 411 U. S. 792 (1973)), aff'd, 948 F.2d 1282 (4th Cir. 1991).

## IV.   **Legal Analysis**

Complainant cannot establish a prima facie case of discrimination using the disparate treatment analysis.  Complainant meets the first three elements of the prima facie case — he is within the protected class, due to his national origin; he is otherwise qualified for the position due to his residency and admitting privileges at the Puget Sound VAMC, and he was not hired for the position.  However, Complainant does not establish the fourth element of the prima facie case — he cannot show a causal nexus between the nonselection and his protected basis.

11

According to the undisputed evidence in this case, the vacancy was held open for at least one year.  During that time, at least three other people were in serious consideration for the position, excluding the Complainant.  Neither the Complainant, nor the Agency, offer any evidence as to who those people are, or what their national origin was.  Ultimately, none of the applicants, including Complainant, were selected for the position during the time that the bylaws required a per-se exclusion of persons with non-ACGME accredited residencies from consideration.  Dr. Snider testified, without contradiction, that the Clarksburg VAMC determined that the credentialing requirement at issue in this case was excluding qualified applicants, so it removed the per se ban on non-ACGME accredited residencies.  Shortly thereafter, the Agency offered Complainant the position, and when he declined, it offered and granted the position to another orthopedic doctor who was born in India and who did his orthopedic residency in India.   The evidence is also uncontradicted that both Dr. Kassim and Dr. Snider, the two hiring decision makers, were vying for Complainant to fill the position, even to the point of offering Complainant's wife a job and having their credentialing person seek guidance from their central credentialing office about whether they had the discretion to waive the ACGME accreditation requirement for his residency.

In short, Complainant offers no evidence, either at the prima facie case level or on the ultimate question of liability, that the Agency intended to exclude Complainant because of his national origin.  Complainant argues that the ACGME requirement should be seen as a stand-in for national origin-based discrimination, however the disparate treatment proof scheme requires an intent by the responsible management official to discriminate on the basis of a protected basis. Complainant offers no evidence that the policy was conceived to exclude foreign trained

12

orthopedic surgeons, or that in its implementation the accreditation policy was manipulated to deny opportunities to foreign trained orthopedic surgeons.

Complainant presents <u>Perez v. United States Postal Service</u> for the proposition that the location of one's school could serve to discriminate against certain protected classes. <u>Perez v. United States Postal Serv.</u>, EEOC Appeal No. 01890963, at *6 (June 29, 1989) ("While criteria such as locations of particular schools could operate to discriminate against particular groups, we find under the particular circumstances of this case that no adverse impact has been proven against Hispanics.") While this admonition is important, in the context of this particular case it does not accomplish what Complainant hopes for in the disparate treatment analysis. First, as Complainant notes the Commission in <u>Perez</u> determined that notwithstanding the fact that the employment decision was based on location of education, it was not a placeholder for race or national origin. <u>Id.</u> Second, the Commission's analysis in <u>Perez</u> addresses education as a disparate impact question, rather than a disparate treatment one ("no *adverse impact* has been proven").

Complainant also argues that in expressly rejecting Complainant because of his residency in a non-ACGME accredited program, the Agency has engaged in direct evidence discrimination, making the <u>McDonnell Douglas</u> analysis inapplicable. <u>See</u> Agency Mot. Summ. J. Ex. 6. This argument is not meritorious in part because Dr. Kassim, one of the decision makers, is a foreign educated doctor who completed his residency in the United States. It is also not meritorious because of Dr. Snider's unrebutted testimony that the Clarkville VAMC employs a significant number of doctors who are foreign born. Dr. Snider testified that all those doctors attended ACGME accredited schools. This undercuts the Complainant's contention that an ACGME accreditation requirement was a "code" for doctors born in the United States. It is also not meritorious because of Dr. Snider's testimony that doctors born in the United States and doctors

born abroad have done residencies in non ACGME accredited programs. Those persons would be equally ineligible for medical privileges at the Clarksburg VAMC, regardless of their national origin.

Complainant has argued that notwithstanding the fact that his immediate supervisor for the position was foreign born, and the person who was hired in his place was also born in India, and the fact that the Agency's Clarksburg VAMC employs many people who are born in India, that his claim is still actionable as discrimination because favoritism towards some members of a protected group does not negate discrimination to other members of the same protected class. Connecticut v. Teal, 457 U.S. 440, 455 (1982); Brown v. Henderson, 257 F.3d 246, 252-55 (2d Cir. 2001). However, the flaw with this argument at the disparate treatment analysis is that Complainant offers no evidence that anyone outside his protected group was ever favored, to his detriment, because of this policy. Complainant offers no evidence of any person who was born in the United States, similarly qualified, who made it further in the hiring process than he did.

Indeed, Complainant offers no evidence of any doctor with any medical specialty born in the United States who applied at the Clarksburg VAMC was hired pursuant to this policy. Complainant might point to Dr. Snider as a comparator for that purposes, but (setting aside all the other dissimilarities between the two), Dr. Snider testified that he began working at the VAMC in 1991, and there was no testimony about whether a similar credentialing requirement was in existence at the time he was hired, or whether he used that credentialing requirement or another to have medical privileges at the hospital.

In short, Complainant's Connecticut v. Teal argument fails on the disparate treatment analysis because he has not proven the central conceit of Teal—that the employment practice was discriminatory, irrespective the bottom line defense on the employee hiring practices.

Further, Complainant offers no evidence to rebut the Agency's legitimate nondiscriminatory reasons for its actions.  Complainant offers no evidence that the ACGME residency requirement was a ruse by the Agency to hide its true motive to deny employment to foreign born doctors.  Indeed, the premise of Complainant's case is that the Clarksburg VAMC faithfully applied its ACGME residency requirement, to his detriment.  Insofar as Complainant makes no offer of pretext, the Agency's legitimate nondiscriminatory reason is unchallenged.

Setting aside the McDonnell Douglass framework, the caselaw charges that the ultimate question for the fact finder is whether the intentionally discriminated against Complainant on the basis of his national origin.  The Administrative Judge finds that the Complainant has not met its burden in this regard.  The evidence in the record confirms that the responsible management officials wanted to hire Complainant, being fully informed of his national origin, but they were constrained by an accrediting policy which did not single out foreign born applicants, and which left them no discretion.

Complainant's arguments have also implicated the disparate impact theory of liability.  To establish a prima facie case of disparate impact discrimination, the plaintiff must demonstrate 1) a facially neutral policy that has a 2) disproportionally adverse effect on a protected class, of which the plaintiff is a member.  Carter v. Burlington N. Santa Fe LLC, 2015 U.S. Dist. WL 11022766, at *5 (N.D. Tex. Oct. 9, 2015).  Herbet v. Monsanto Co., 682 F.2d 1111 (5th Cir. 1982).  Complainant establishes the first element without much effort — he points to the ACGME residency requirement.  The second element, however, presents more difficulty.  Complainant cites to an annual census performed by the American Medical Association which indicates that the overwhelming majority of persons in ACGME accredited orthopedic residency programs obtained their medical degrees from United States medical graduate programs.  Exhibit

15

9, reflecting 2006 medical residency information, states that 96.9% of the persons then enrolled in orthopedic surgery residencies previously attended U.S. medical graduate programs.  By contrast, 73 persons, reflecting 2.3% of the total population, were the graduates of international medical institutions.  Exhibit 10, reflecting the 2012-2013 census, shows similar information.  In that year, 96.6% of the orthopedic surgery residents attended U.S. medical graduate programs; 2.4% attended international medical schools.  The 2013-2014 AMA census shows the same — 97% of residents previously attended U.S. medical schools, 2% were the product of foreign medical schools.

To this, Complainant adds the physician specialty data book, which Complainant argues provides a survey of active physicians by specialty and the provenance of their underlying degrees.  That document states that of the 19,374 total active physicians who practice in orthopedic surgery in 2013, 1,105, or 5.7%, are international medical graduates.

However, Complainant's evidence does not speak to the precise issue necessary for Complainant to establish this element.  In order to prevail, Complainant need show that there is a statistically significant correlation between not being born in the United States and not being accepted into an ACGME approved orthopedic surgery program.  Complainant has instead presented evidence that there is a statistically significant correlation between prospective orthopedic surgeons who graduated from an American medical school and their admittance to ACGME orthopedics surgery programs.  This distinction is not a fine one — potentially, many graduates of medical colleges in the United States are foreign born.  Also presumptively, at least some graduates of international medical institutions who applied to ACGME approved orthopedic surgery programs are born in the United States.  Complainant does not present

16

sufficient evidence on this question for the Administrative Judge to conclude that there is a disparate impact between a domestic orthopedic residency and one's national origin.

Moving from the statistical data to the anecdotal evidence, Complainant has testified eloquently about his own experiences in this regard — he stated that he applied multiple times for the pathway to certification through the American Board of Orthopedic Surgery, to no avail. Moreover, his personal experiences with other orthopedic surgeons reflect his own inference that most U.S. graduates of medical programs are born in the United States. Added to this, both the Complainant and his prospective employees at the Martinsburg VAMC testified to Complainant's significant expertise in orthopedic surgery, his prior experiences also within the VAMC, and the Martinsburg VAMC's fervent desire to hire him. The Administrative Judge also notes that the Agency's policies concerning a flat prohibition to hiring employees without a prior residency in ACGME accredited university was ultimately changed. However, even this persuasive anecdotal evidence is insufficient to establish the legal standard at issue in this case — that the Agency's overall policy has a disproportionate impact on persons born outside of the United States. Insofar as Complainant fails to establish the elements of a prima facie case for either the disparate impact or disparate treatment theories of liability, his claim to national origin discrimination must be denied.

## V.    <u>Conclusion</u>

In conclusion, I find that Complainant did not establish by a preponderance of the evidence that the Agency discriminated against him based on his national origin when on July 24, 2015, Complainant became aware that he was not eligible to be hired for the position of Orthopedic

Surgeon because he did not possess certification from a recognized board in the United States.

It is so ORDERED.

Fort the Commission:

Tuesday, March 31, 2020                           /s/John Henderson
DATE                                              JOHN ALVIN HENDERSON
                                                  ADMINISTRATIVE JUDGE

<u>NOTICE</u>

This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to C.F.R. § 1614.109(b), 109(g) or 109(i). **With the exception detailed below, the complainant may not appeal to the Commission directly from this decision.** EEOC regulations require the Agency to take final action on the complaint by issuing a final order notifying the complainant whether or not the Agency will fully implement this decision within forty (40) calendar days of receipt of the order entering judgment  and this decision. The complainant may appeal to the Commission within thirty (30) calendar days of receipt of the Agency's final order.  The complainant may file an appeal whether the Agency decides to fully implement this decision or not.

The Agency's final order shall also contain notice of the complainant's right to appeal to the Commission, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for such appeal or lawsuit. If the final order does not fully implement this decision, the Agency must also simultaneously file an appeal to the Commission in accordance with 29 C.F.R. ' 1614.403, and append a copy of the appeal to the final order.  A copy of EEOC Form 573 must be attached.  A copy of the final order shall also be provided by the Agency to the Administrative Judge.

If the Agency has <u>not</u> issued its final order within forty (40) calendar days of its receipt of the order entering judgment and this decision, the complainant may file an appeal to the Commission directly from this decision.  In this event, a copy of the Administrative Judge's decision should be attached to the appeal.  The complainant should furnish a copy of the appeal to the Agency at the same time it is filed with the Commission, and should certify to the Commission the date and method by which such service was made on the Agency.

All appeals to the Commission must be filed by mail, personal delivery or facsimile to the following address:

Director
Office of Federal Operations
Equal Employment Opportunity Commission
PO Box 77960
Washington, DC  20013
Fax No. (202)663-7022

Facsimile transmissions over 10 pages will not be accepted.

## COMPLIANCE WITH AN AGENCY FINAL ACTION

An Agency's final action that has not been the subject of an appeal to the Commission or civil action is binding on the Agency.  See 29 C.F.R. § 1614.504. If the complainant believes that the Agency has failed to comply with the terms of its final action, the complainant shall notify the Agency's EEO Director, in writing, of the alleged noncompliance within thirty (30) calendar days of when the complainant knew or should have known of the alleged noncompliance.  The Agency shall resolve the matter and respond to the complainant in writing.  If the complainant is not satisfied with the Agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the Agency has complied with the terms of its final action.  The complainant may file such an appeal within thirty (30) calendar days of receipt of the Agency's determination or, in the event that the Agency fails to respond, at least thirty-five (35) calendar days after complainant has served the Agency with the allegations of noncompliance. A copy of the appeal must be served on the Agency, and the Agency may submit a response to the Commission within thirty (30) calendar days of receiving the notice of appeal.

## UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## BALTIMORE FIELD OFFICE

| | |
|---|---|
| **DR. MITAL PATEL,** )<br>    **Complainant** )<br>            )<br>    **v.** )<br>            )<br>**ROBERT WILKIE,** )<br>**SECRETARY, UNITED STATES** )<br>**DEPARTMENT OF VETERANS** )<br>**AFFAIRS** )<br>    **Agency** )<br>            )<br>            ) | **EEOC NO: 530-2016-00308X**<br><br>**AGENCY NO:**<br>     **2004-0540-2015104863**<br><br>**JOHN ALVIN HENDERSON**<br>**ADMINISTRATIVE JUDGE** |

## ORDER ENTERING JUDGMENT

For the reasons set forth in the Decision dated March 31, 2020, judgment in the above-captioned matter is hereby entered in favor of the Secretary.

A notice of appeal rights is attached hereto.

It is so ORDERED,

For the Commission:

_____/s/John Henderson_____
JOHN ALVIN HENDERSON
ADMINISTRATIVE JUDGE

## CERTIFICATE OF SERVICE

I certify that the foregoing **ORDER** was sent on Tuesday, March 31, 2020 to the following:

Mital Patel                                              UPLOADED/ISSUED VIA FEDSEP
Complainant
1803 Red Rock Road
Gallup, NM 87301
Email: mital1982@gmail.com

Erik Snyder, Esq.                                  UPLOADED/ISSUED VIA FEDSEP
Counsel for Complainant
Passman and Kaplan, PC
1828 L Street, NW Suite 600
Washington, DC 20036
Email: ESnyder@passmanandkaplan.com

Stephen Butera, Esq.                             UPLOADED/ISSUED VIA FEDSEP
Counsel for the Agency
One Medical Center Drive
Clarksburg, WV 26301
Email: stephen.butera@va.gov

_____
Angelo Haskins
Legal Technician

CERTIFIED MAIL

7014 2120 0001 8693 6671

FROM:

MITAL PATEL
1900 HOT SPRING BLVD
LAS VEGAS
NM  87701

TO:

United States District Court
333 Lomas Blvd NE
Suite 270
Albuquerque
NM  87102

Utility Mailer