IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

FILED
OCT 27 2022
U.S. DISTRICT COURT-WVND
WHEELING. WV 26003

MITAL PATEL,

**Plaintiff,**

v.

CIVIL ACTION NO.: 1:21CV131
(BAILEY)

DENIS MCDONOUGH, Secretary of the
U.S. DEPARTMENT OF VETERANS
AFFAIRS,

**Defendant.**

## ORDER GRANTING DEFENDANT'S MOTION [81] FOR SUMMARY JUDGMENT

Currently pending before the Court is Defendant's Motion [81] for Summary Judgment.[1] The matter has been fully briefed. Oral Argument would not significantly aid the decisional process. Accordingly, the Court's decision is set forth below.

## I.
## FACTUAL/PROCEDURAL HISTORY

### A. General Statement of Facts

Plaintiff brought this action under Title VII of the Civil Rights Act of 1964, as amended. More specifically, this matter arises out of Plaintiff's attempt to secure employment with the Clarksburg Louis A. Johnson Veterans Affairs Medical Center ("the Clarksburg VAMC") in 2015. Plaintiff claims that he was disparately treated based on his national origin when he was not hired as a physician at the Clarksburg VAMC. Plaintiff further claims that the hospital's policy that its physicians either be Board Certified or have conducted a residency at a facility/program accredited

---

[1] This matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *See* ECF No. 50.

by the Accreditation Council for Graduate Medical Education ("ACGME") resulted in disparate treatment of all physicians who completed their medical residency outside of the United States, and thus disparately impacted people on the basis of their national origin. Plaintiff filed his initial Complaint on August 27, 2020, in the United States District Court for the District of New Mexico. ECF No. 1. Plaintiff filed an Amended Complaint on September 21, 2020. ECF No. 7. This matter was transferred from New Mexico on September 23, 2021. ECF No. 35.

Prior to filing the instant action, Plaintiff filed a formal complaint of discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC"). This matter proceeded in the normal course through the administrative process. The Administrative Law Judge decided the matter in Defendant's favor in a decision rendered March 31, 2020. ECF No. 81-3.

On August 10, 2022, and pursuant to the Scheduling Order entered April 5, 2022, [ECF No. 66], Defendant filed its Motion for Summary Judgment and Memorandum in Support. ECF No. 81. Plaintiff filed a Memorandum in Opposition on August 31, 2022. ECF No. 82. Defendant filed a Reply in Support on September 14, 2022. ECF No. 83.

**B. Statement of Undisputed Facts**

The following facts are undisputed in the record:

- Jurisdiction is proper (ECF No. 7, p. 1; ECF No. 57, p. 1);

- Plaintiff exhausted his administrative remedies prior to instituting this suit (ECF No. 7, p. 1; ECF No. 57, p. 1);

- Plaintiff was born in India (ECF No. 81-1, p. 3; ECF No. 82, p. 1);

- Plaintiff attended medical school at Baroda Medical College in Vadodara, India and completed his orthopedic surgery residency at Baroda Medical College in Vadodara, India (ECF Nos. 81-1, p. 3; ECF No. 82, p. 1; ECF No. 7, p. 3 ECF No. 57, p. 2);

- Following the completion of his residency, Plaintiff received certification from the Educational Commission for Foreign Medical Graduates ("ECFMG") (ECF No. 7, p. 3; ECF No. 57, p. 2);

- Plaintiff applied for the position of Physician (Orthopedic Surgeon), Vacancy ID 1339775, Announcement Number T38-15-09-CSB-1339775-BU, at the Clarksburg VAMC (ECF No. 7, p. 3; ECF No. 57, p. 3);

- At the time of Plaintiff's application to the Clarksburg VAMC, it was the policy of the VA to require the following (as applicable to this case) before granting clinical privileges to practice orthopedic surgery (and thus, to be hired): (1) current certification or active participation in the examination process leading to certification in orthopedic surgery by the American Board of Orthopedic Surgery, or (2) successful completion of an ACGME or AOA accredited post graduate training program in orthopedic surgery (ECF No. 7, p. 4; ECF No. 81-1, p. 4);

- To obtain board certification in orthopedic surgery, one must complete 60 months of accredited residency, no more of 6 months of which can be obtained in a residency program outside of the United States (ECF No. 7, p. 4; ECF No. 81-1, p. 5);

- At the time of his application, Plaintiff was not Board Certified in Orthopedic Surgery (ECF No. 81-1, p. 4-5; ECF No. 82-6, p. 8; ECF No. 82-8, p. 3-4);

- At the time of his application, Plaintiff had not completed an ACGME accredited post-graduate training program in orthopedic surgery (ECF No. 7, p. 13; ECF No. 57, p.2; ECF No. 81-1, p. 4-5; ECF No. 82-3, p. 3; ECF No. 82-6, p. 8);

- At the time of his application, Plaintiff had completed a one-year fellowship with Lenox Hill Hospital in New York City in Adult Hip Orthopedic Reconstruction, which was accredited by the ACGME (ECF No. 7, p. 3; ECF No. 81-1, p. 3; ECF No. 82-4, p. 2);

- According to Defendant, Plaintiff did not meet the credentialing requirements because he had not completed an ACGME or AOA accredited post graduate program in orthopedic surgery (ECF No. 7, pgs. 4 and 14; ECF No. 81-1, p. 5);

- No exception could be made for Plaintiff's fellowship with Lenox Hill Hospital or any comparable training he might have received abroad (*Id.*; ECF No. 81-3, p. 6);

- Approximately one year after Plaintiff's application, Clarksburg VAMC changed its credentialing policy to widen its potential physician applicant pool (ECF No. 81-1, p. 6);

- Clarksburg VAMC offered Plaintiff a position as an orthopedic surgeon, but Plaintiff declined the offer (ECF No. 81-1, p. 6; ECF No. 81-3, p. 7);

- Plaintiff accepted a position with a hospital in New Mexico where he makes approximately $555,000 per year (ECF No. 81-3, p. 7);

- Dr. Sambandan, an orthopedic doctor who was born in India and completed his medical residency in India, was hired to fill the vacancy at issue (ECF No. 81-1, p. 6; ECF No. 81-4, p. 69).

## II.
## ARGUMENTS OF THE PARTIES

**A. Defendant's Arguments**

4

Defendant argues that there are no genuine issues of material fact, and thus, summary judgment is appropriate. Defendant contends that Defendant has failed to make a prima facie case that he was disparately treated, and Defendant further contends that Plaintiff cannot support his claim of disparate impact because he does not have an expert to present at trial.

### B. Plaintiff's Arguments

Plaintiff contends that genuine issues of material fact exist, which preclude summary judgment. In particular, Plaintiff contends that the issue of Defendant's motivation in failing to hire Plaintiff is a genuine issue of material fact which must be decided by a jury. Plaintiff further argues that Plaintiff does not need an expert to introduce statistics at trial to support his claim for disparate impact. Plaintiff argues that Defendant's Motion should be denied.

### III.
### APPLICABLE LAW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court views the facts and inferences in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "When a properly supported summary judgment motion is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* See also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 250 (1986) (internal quotations omitted).

# IV.
# DISCUSSION

After considering the arguments of the parties, the applicable law, and the Court file, the Court is satisfied that Defendant's Motion for Summary Judgment should be **GRANTED** because no genuine issues of material fact exist for trial.

### A. Disparate Treatment

Plaintiff has asserted a disparate treatment claim under Title VII of the Civil Rights Act, which makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff claims that Defendant discriminated against him because of his national origin. *See* ECF No. 7.

"A plaintiff may establish a Title VII violation by direct evidence, circumstantial evidence, or some combination of the two." *Robinson v. Volvo Group North America, LLC*, 65 F.Supp.3d 458, 461 (M.D.N.C. Nov. 4, 2014) citing *Moore v. City of Charlotte*, 754 F.2d 1100, 1105 (4th Cir. 1985) (discussing the ways discriminatory intent may be shown by direct or circumstantial evidence). The *Robinson* Court acknowledged that "[a]t times, the Fourth Circuit has suggested that direct or circumstantial evidence may establish discriminatory intent, separate and apart from the well-known prima facie case set forth in *McDonnell Douglas Corp. v. Green*[2]....At other times, the court has suggested that circumstantial evidence is the heart of the *McDonnell Douglas* approach." However, "[r]egardless of the method of proof used, the court has made it clear that '[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally

---

[2] 411 U.S. 792, 802 (1973).

discriminated against [them]." *Robinson v. Volvo Group North America, LLC*, 65 F.Supp.3d 458, 461 n. 2.

Here, there is no dispute that there is no direct evidence of discrimination. "Without direct evidence of intentional discrimination, a plaintiff may use the burden-shifting framework of *McDonnel Douglas Corp. v. Green*…to develop and inferential case of discriminatory intent." *Lyons v. City of Alexandria*, 35 F.4th 285, 289 (4th Cir. 2022). Plaintiff has in fact chosen to use the burden-shifting framework of *McDonnel Douglas*. ECF No. 82. The Court will therefore consider the evidence and argument presented to the Court vis-à-vis this framework.

"The *McDonnell Douglas* framework has three steps. First, the plaintiff must establish a prima facie case of…discrimination….Then, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. Finally, the burden shifts back to the plaintiff to show that the employer's proffered legitimate, nondiscriminatory reason is a pretext." *Id.* (internal citations omitted). In the instant case, Defendant argues that Plaintiff has failed to make a prima facie case of discrimination.

To make a prima facie case of discrimination, a plaintiff must show that (1) the complainant belongs to a protected class; (2) that the complainant applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite complainant's qualifications, complainant was rejected; (4) under circumstances giving rise to an inference of discrimination, i.e., that, after the rejection, the position remained open, and the employer continued to seek applications from persons of complainant's qualifications [outside the protected class]. *See McDonnell Douglas Corp*, 411 U.S. at 802. *See also McNaught v. Virginia Community College System*, 933 F.Supp.2d 804, 817-18 (E.D. Va. Mar. 20, 2013) ("[i]t is well-established that in order to satisfy [the fourth] prong in an ordinary discrimination case, a plaintiff only needs to show that the position was filled

by an applicant outside of the plaintiff's protected group"). Plaintiff claims that only the fourth element is in dispute. *See* ECF No. 82, p. 14. Defendant, however, appears to contest the second element, as well. *See* ECF No. 81-1, p. 10 n. 6. Notwithstanding, the body of Defendant's Motion focuses primarily upon the fourth prong.[3] Thus, the Court will consider only the fourth element vis-à-vis Defendant's Motion for Summary Judgment. In so doing, the Court will construe the evidence in the light most favorable to Plaintiff and, for purposes of evaluating Defendant's Motion for Summary Judgment, will proceed with the assumption that Plaintiff was qualified for the position at issue.

Defendant argues that Plaintiff has failed to provide any evidence that Defendant's decision not to hire Plaintiff was made under circumstances which give rise to an inference of discrimination because Plaintiff has not provided any evidence to support a conclusion that prospective employees outside of Plaintiff's protected class were treated more favorably under similar circumstances. In response to Defendant's arguments, Plaintiff first argues that Defendant concluded Plaintiff's medical residency in India was not comparable to a residency in the United States. ECF No. 82-3; ECF No. 82-7, p. 35; and ECF No. 82-8. Plaintiff next argues that Defendant's expert, Ms. Enchelmayer, testified that Plaintiff's successful completion of an ACGME fellowship satisfied Clarksburg VAMC's Privileges Policy. Finally, Plaintiff points to the testimony of Drs. Cassim and Snider that they would have hired Plaintiff if he could have been privileged at the hospital. However, these facts, even when viewed in the light most favorable to Plaintiff, do not give rise to an inference of discrimination because none of these facts, regardless of whether they are considered separately or together, show that Defendant continued to seek or

---

[3] Defendant's argument with respect to the second prong appears in footnote no. 6 of Defendant's brief in support of his Motion for Summary Judgment. *See* ECF No. 81-1, p. 10.

accept applications from persons with Plaintiff's qualifications, but outside of the protected class (i.e. national origin).[4] *See McNaught*, 933 F.Supp.2d at 817-18. Indeed, there appears to be no evidence in the record that anyone outside of Plaintiff's class with similar qualification and/or in similar stead as Plaintiff vis-à-vis the vacancy at issue fared better than Plaintiff at any point during the evaluation process. Because Plaintiff has filed to demonstrate that he was refused employment under circumstances that give rise to an inference of discrimination, the Court must find that Plaintiff has failed to establish a prima facie case of disparate treatment discrimination under Title VII of the Civil Rights Act.

### B. Disparate Impact

Disparate impact claims under Title VII of the Civil Rights Act serve to ameliorate rules in the workplace and business practices that are "fair in form, but discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). To establish a prima facie case of disparate impact discrimination, a plaintiff must demonstrate that (1) a facially neutral policy has a (2) disproportionally adverse impact upon a protected class, of which the plaintiff is a member. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 265 (4th Cir. 2005). Only the second element is in dispute here. "In establishing a prima facie violation of Title VII, a plaintiff may use statistical evidence." *Id.*

To support his disparate impact claim, Plaintiff has offered statistical evidence. *See* ECF No. 82, pgs. 19-21. *See also* ECF No. 85. "Proof of disparate impact requires reliable and accurate statistical analysis performed by a qualified expert." *EEOC v. Freeman*, 961 F.Supp.2d 783, 786 (D. Md. Aug. 9, 2013). More particularly, a plaintiff in a disparate impact

---

[4] In fact, the opposite is true. Once Clarksburg VAMC's Privileges Policy was changed, and after Plaintiff rejected the offer for the position at issue, Clarksburg VAMC filled the vacancy with a physician, Dr. Sambandan, an orthopedic doctor who was born in India and who did his orthopedic residency in India.

case "bears the burden of supplying *reliable* expert testimony and statistical analysis that demonstrates disparate impact stemming from a *specific* employment practice before such a violation can be found." *Id.* at 787 (emphasis in original). Here, Plaintiff has not designated an expert to explain and/or present these statistics and their import. *See* ECF No. 85. Without such expert evidence and/or testimony, Plaintiff cannot support a prima facie case for disparate impact discrimination. Plaintiff's lack of an expert is therefore fatal to Plaintiff's case.

Even if the Court could or would be inclined to consider the reports Plaintiff has offered in his Memorandum in Opposition (ECF No. 82), the Court would nevertheless conclude that Plaintiff has failed to make a prima facie case of disparate impact discrimination. To support such a claim, again, Plaintiff may rely upon statistical evidence. *See Anderson*, 406 F.3d at 265. According to *EEOC v. Freeman,* 961 F.Supp.2d at 786-787, the evidence must demonstrate a disparate impact which stems from *a specific employment practice*. The employment practice Plaintiff highlights in the instant case is Clarksburg VAMC's (expired) requirement that physicians be board certified or have completed an ACGME accredited post graduate training program in orthopedic surgery. The statistical reports submitted by Plaintiff, however, do not relate to this specific employment practice. Rather, the reports, articles, and papers Plaintiff cites appear to discuss diversity in orthopedic surgery as a general matter, and the plight of international medical students vis-à-vis orthopedic residency programs. *See* ECF No. 82, pgs. 19-21. This is not a specific enough association to support a prima facie case for disparate impact discrimination. The case law requires evidence to support a finding that Defendant's specific business practice had a disparate impact upon a class of persons of non-U.S. national origin. *See Freeman*, 961 F.Supp.2d at 786-87 ("[m]erely pointing to 'statistical disparities in the employer's work force' is not sufficient; the plaintiff must provide 'statistical evidence of a kind and degree sufficient to show

10

that the practice in question has caused the exclusion of applicants for jobs…because of their membership in a protected group") (quoting *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 992 (1988)). Plaintiff therefore cannot make a prima facie case of disparate impact discrimination.

## V.
## CONCLUSION

Accordingly, and for all of the foregoing reasons, Defendant's Motion [81] for Summary Judgment is **GRANTED**, and this case is hereby **DISMISSED WITH PREJUDICE**. The Court **DIRECTS** the Clerk to **STRIKE** this matter from the active docket of this Court and enter judgment in favor of Defendant.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk of the Court to serve a copy of this Order upon any *pro se* party by certified mail, return receipt requested, and to counsel of record herein.

Dated: 10-27-22

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

11